# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **LIBBIE KAY PANNELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **5:18-cv-00246-AKK** |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Libbie Kay Pannell brings this action pursuant to Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the Administrative Law Judge's ("ALJ's") denial of disability insurance benefits, which has become the final decision of the Commissioner of the Social Security Administration ("SSA"). For the reasons explained below, the court finds that the ALJ applied the correct legal standard and that her decision—which has become the final decision of the Commissioner—is supported by substantial evidence. Therefore, the court affirms the decision denying benefits.

## I. Procedural History

Pannell filed an application for a period of disability, disability insurance benefits, and supplemental security income on November 27, 2012, alleging that

she suffered from a disability, beginning September 29, 2012 due to back and neck pain, depression, and anxiety. R. 125, 286, 293. After the SSA denied her applications, R. 188-93, Pannell requested a hearing before an ALJ, R. 203. Following an initial hearing, the ALJ entered an unfavorable decision. R. 161-80. The SSA Appeals Council granted Pannell's request for review, vacated the ALJ's decision, and remanded the case for further action. R. 181-84. Ultimately, after a second hearing, the ALJ entered an unfavorable decision finding that Pannell was not disabled. R. 8-23. The SSA Appeals Council denied Pannell's second request for review, rendering the ALJ's decision the final decision of the Commissioner. R. 2. Having exhausted her administrative remedies, Pannell timely filed this petition for review pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the

evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "'reasonable and supported by substantial evidence.'" *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "'[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against those findings. *See id.* While judicial review of the ALJ's findings is limited in scope, it "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

In contrast to the deferential review accorded the Commissioner's factual findings, "conclusions of law, including applicable review standards, are not presumed valid" and are subject to de novo review. *Martin*, 894 F.2d at 1529. The Commissioner's failure to "apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed" requires reversal. *Id.*

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the ALJ must determine in sequence:

(1)   whether the claimant is currently unemployed;

(2)   whether the claimant has a severe impairment;

(3)   whether the impairment meets or equals one listed by the Secretary;

(4)   whether the claimant is unable to perform his or her past work; and

(5)   whether the claimant is unable to perform any work in the national economy.

*See McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'" *Id.* (citing 20 C.F.R.

§ 416.920(a)-(f)). "Once [a] finding is made that a claimant cannot return to prior

work the burden of proof shifts to the Secretary to show other work the claimant

can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). However, the

claimant ultimately bears the burden of proving that she is disabled, and,

"consequently [s]he is responsible for producing evidence in support of he[r]

claim." *See, e.g.*, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing

20 C.F.R. § 416.945(a), (c)).

## IV. The ALJ's Decision

Applying the five-step analysis, the ALJ found that Pannell satisfied step

one because she had "not engaged in substantial gainful activity since September

29, 2012, the alleged onset date" of her disability. R. 14. The ALJ proceeded to

step two, finding that Pannell had the severe impairments of degenerative disc

disease, anxiety, and depression. *Id.* At step three, the ALJ concluded that

Pannell's impairments did not "meet[] or equal[] the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." R. 16. Next, the

ALJ determined Pannell's residual functional capacity ("RFC"), finding that:

> [Pannell] has the [RFC] to perform light work . . . except that she
> must be afforded the option to sit or stand during the workday at the
> workstation. She [] can perform frequent postural maneuvers except
> no climbing of ropes, ladders, or scaffolds. She would need to avoid
> dangerous moving unguarded machinery and unprotected heights.
> She can understand, remember, and apply simple instructions and

tasks. She is limited to jobs involving infrequent and well-explained workplace changes. She would be able to concentrate and remain on task for two hours at a time sufficient to complete an eight-hour workday. She is limited to occasional interaction with the general public.

R. 17. Based on Pannell's RFC, and relying on the testimony of a Vocational Expert ("VE"), the ALJ found at step four that Pannell "is unable to perform any past relevant work." R. 21. The ALJ then proceeded to step five, where based on Pannell's RFC, age, prior work experience, and the VE's testimony, the ALJ concluded that "jobs that exist in significant numbers in the national economy that [Pannell] can perform," including wire worker, hand packer, and laundry worker. R. 21-22. Therefore, the ALJ concluded that Pannell was not disabled from the alleged onset date through the date of her decision. R. 22.

### V. Analysis

Pannell argues that the ALJ erred by giving only limited weight to the opinion of her treating physician while giving great weight to the opinion of a non-examining physician. Doc. 10 at 3-6. For the reasons discussed below, the court finds that substantial evidence supports the ALJ's decision and that the decision is due to be affirmed.

### A. Whether the ALJ erred by giving limited weight to the opinion of Pannell's treating physician

Pannell first argues that the ALJ failed to properly weigh the opinion of her treating physician, Dr. Younus M. Ismail. Doc. 10 at 3-5. The ALJ must give

"substantial or considerable weight" to the opinion of a treating physician "unless 'good cause' is shown." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists 'when []: (1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). The ALJ must clearly articulate the reasons for not giving substantial or considerable weight to a treating physician's opinions. *Id.*

Pannell contends that the court should reverse the ALJ's decision because the ALJ erred by not giving controlling weight to the opinion of Dr. Ismail, who treated Pannell at the Scottsboro Quick Care Clinic from August 2012 through 2017, and by not evaluating Dr. Ismail's opinion based on the factors outlined in the SSA regulations. Doc. 10 at 4-5. In particular, Pannell faults the ALJ for purportedly not considering the length of time that Dr. Ismail treated Pannell and the medical records that support Dr. Ismail's opinion. *Id.* Pannell's arguments are not persuasive because, as an initial matter, the ALJ mentioned the length of the treating relationship in her decision, which indicates she considered that factor, and the ALJ also considered and summarized all of Pannell's medical records,

including the records from Dr. Ismail.  *See* R. 14-17, 19-20.  In addition, nothing in Dr. Ismail's opinions is contrary to the ALJ's determination of Pannell's RFC. Rather, Dr. Ismail's opinions provide support for the ALJ's decision.

A review of the record shows that Dr. Ismail diagnosed Pannell with anxiety disorder with panic attack in August 2012 and prescribed BuSpar to treat the condition.  R. 508.  At follow-up appointments in September and November 2012, Pannell reported that her anxiety was "doing better" and "under better control" since she began taking BuSpar.  R. 510, 514.

Dr. Ismail performed a consultative examination of Pannell in January 2013, which revealed that Pannell had a normal cervical spine with normal range of motion, and a normal dorsal lumbar spine with no tenderness on her back, though Pannell had some complaints of pain on flexion.  R. 542-44.  At the examination, Dr. Ismail observed that Pannell had a normal gait, with no evidence of ataxia, and that Pannell could do heel-toe walking and squatting.  R. 543.  Based on his exam, Dr. Ismail diagnosed Pannell with chronic back pain, degenerative disease of the spine, depression, anxiety, hypothyroidism, and menopausal syndrome, and he noted that while Pannell has "some limitation of dorsal lumbar spine," her "major problem is her depression and anxiety."  R. 544.

After the consultative examination, Pannell continued to see Dr. Ismail almost monthly for treatment of her depression, anxiety, hypothyroidism, and pain.

R. 630-38, 641-47, 650-51, 654-61, 692-872. At follow-up appointments in October 2013 and March 2014, Pannell reported that her depression was under better control, and in May 2014, she reported that her joint pain was better controlled with medication. R. 631, 641, 650.

Beginning in June 2014, Dr. Ismail's treating notes mistakenly refer to Pannell as a male patient. R. 700-872. In light of that mistake, the ALJ gave only limited weight to Dr. Ismail's records from June 2014 through June 2017. R. 20. Pannell attacks that decision, contending that the misidentification is only a typographical error and not a sufficient reason to discount Dr. Ismail's opinion. Doc. 10 at 4. Even if the mistake is simply a typographical or clerical error, Pannell does not point to anything in the Dr. Ismail's later records that would change or is contrary to the ALJ's determination of her RFC. *See id.* Indeed, Dr. Ismail's later records consistently reflect that Pannell's depression and anxiety were only moderate and controlled with medication. R. 712, 716, 720, 726, 730, 735, 739, 743, 747, 751, 755, 760, 764, 768, 772, 776, 781, 785, 794, 816, 825, 829, 833, 862, 867. Additionally, with respect to Pannell's physical condition, Dr. Ismail's records indicate that Pannell's spine and joints were normal, her pain level was usually between a one and three, and Pannell's pain was controlled with

medication.  R. 752-53, 756, 761, 763, 765, 769, 773, 777, 782, 786.[1]  Finally,

nothing in the records indicates that Dr. Ismail placed any limitations on Pannell's

functioning.  *See* R. 700-872.

Dr. Ismail's opinions are consistent with the ALJ's determination of

Pannell's RFC, which limits Pannell to less than a full range of light work, and

jobs involving simple instructions and tasks, infrequent job changes, and only

occasional interaction with the general public.  R. 17.  Accordingly, even if the

ALJ erred by not giving controlling weight to Dr. Ismail's opinions and by

discounting his later opinions, any such error is harmless.  *See Shaw v. Astrue*, 392

Fed. Appx. 685, 687 n.1 (11th Cir. 2010) (citing *Diorio v. Heckler*, 721 F.2d 726,

728 (11th Cir. 1983)) (finding that "even if the ALJ erred in failing to mention

every finding made by Dr. Muller, any such error was harmless" when the ALJ's

determination of the claimant's RFC was consistent with the doctor's opinions).

### B.       Whether the ALJ properly considered the opinion of the state agency psychological expert

Pannell also argues that the ALJ erred in weighing the opinion of Dr. Robert

Estock, a non-examining state agency psychological consultant.  Doc. 10 at 3, 5-6.

Dr. Estock prepared a mental RFC assessment of Pannell based on his review of

Pannell's records.  R. 137-38.  Dr. Estock opined that Pannell would be able to

carry out short simple instructions and tasks and would have moderate limitations

---

[1] Pannell reported to Dr. Ismail that her pain level was a six in April 2015, a four in May 2015, and between a three or eight in March 2016.  R. 744, 748, 765.

in the following abilities: understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; interacting appropriately with the general public; and responding appropriately to criticism from supervisors and changes in the workplace. R. 137-38. Dr. Estock further opined that Pannell would miss one to two days of work per month due to psychological symptoms. R. 138-39. The ALJ generally gave great weight to Dr. Estock's opinion because it was supported by the record, but she disagreed with the opinion that Pannell would miss one or two days per month. R. 20.

Pannell first faults the ALJ for giving great weight to Dr. Estock's opinion because the opinion was more than four and a half years old at the time the ALJ rendered her decision, and Pannell correctly points out that Dr. Estock based his opinion on medical records dated prior to February 4, 2013. *Id.* at 3. As discussed above, however, Pannell's more recent medical records show that her depression and anxiety are moderate and controlled by medication. *See* pp. 8-10, *supra*. Thus, nothing in Pannell's more recent medical records is contrary to Dr. Estock's opinion. *See* R. 700-872.

Next, Pannell contends that the ALJ erred by adopting most of Dr. Estock's opinion, while rejecting his opinion that Pannell would likely miss one to two days of work per month. Doc. 10 at 5-6. The ALJ did not adopt that aspect of Dr. Estock opinion because she found that it was not supported by evidence in the

record.  R. 20.  Indeed, Dr. Jon Rogers, who performed a consultative psychological evaluation of Pannell in January 2013, found that Pannell had only moderate mental impairments and that her ability to understand, remember, and carry out instructions and respond appropriately to supervisors, co-worker, and work pressures would be only moderately impaired.  R. 538-39.[2]  Additionally, as discussed above, Dr. Ismail's records reflect that Pannell's anxiety and depression were controlled by medication.  R. 641-61, 692-872.  Taken together, those records support the ALJ's finding, and, therefore, the ALJ did not err by rejecting Dr. Estock's opinion that Pannell would likely miss one to two days of work per month due to psychological symptoms.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Pannell is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching her decision.  Therefore, the Commissioner's final decision is due to be affirmed.  A separate order in accordance with the memorandum of decision will be entered.

_____

[2]  In her decision, the ALJ incorrectly states that Pannell has no limitation in understanding, remembering, or applying information, which is contrary to Dr. Rogers' opinion. R. 16.  This error is harmless, however, because in formulating Pannell's RFC, the ALJ limited Pannell to simple instructions and tasks and jobs involving infrequent and well-explained workplace changes.  R. 17.

**DONE** the 23rd day of January, 2019.

ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE